UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM COCKREAM,

                Petitioner,                  Case Number 2:11-CV-11407
                                            Honorable Nancy G. Edmunds

v.

DEBRA SCUTT,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS

This matter is before the Court on Petitioner William Cockream's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254.  On May 2, 2008, Petitioner was convicted after a jury trial in the Mason Circuit Court of first-degree murder, MICH. COMP. LAWS § 750.316; armed robbery, MICH. COMP. LAWS § 750.529; conspiracy to commit armed robbery, 750.157a; and commission of a felony with a firearm.  MICH. COMP. LAWS § 750.227b.  Petitioner was sentenced to concurrent terms of life for the murder conviction and 20-to-40 years for the armed robbery and conspiracy convictions, and he received a consecutive two-year term for the firearm conviction.  The petition raises four claims: (1) the trial court failed to instruct the jury on involuntary manslaughter; (2) the prosecutor committed misconduct during closing argument; (3) the prosecutor tampered with the evidence and vouched for the credibility of its witnesses; and (4) Petitioner's trial attorney was ineffective for failing to object to the misconduct of the prosecutor.  The Court will deny the petition because the claims are meritless. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal informa pauperis.

## I. Facts and Procedural History

This case arose after the shooting death of Jarret Barnard in his Ludington, Michigan apartment on November 29, 2007. The prosecutor's theory at trial was that Petitioner and three other men, Anthony Southwell, Christopher Latimer, and Donquez Hayes, agreed to rob Barnard of marijuana and money.  Petitioner, who was 35 years old, lived in Jackson, but on the date of the incident he was visiting Southwell, his 22-year-old nephew. Southwell lived east of Ludington, in Baldwin, and was friends with Latimer and Latimer's brother, Haynes. When the four men arrived at Barnard's apartment, Petitioner was armed with a single-shot .22 caliber pistol. During the robbery Petitioner shot Barnard in the heart, killing him.

At trial, Nathan Larson testified that on the date of the incident he was with Barnard and Raymond Parisza, his close friends, at Barnard's apartment.  The three men watched a movie and smoked marijuana.  Earlier that day, Latimer called Larson and asked if he had marijuana to sell, and Larson told him to come to Barnard's apartment later to see if Barnard had any for sale.

According to Southwell, later that day, Southwell drove Petitioner, Latimer, and Hayes to Barnard's apartment.  Petitioner and Southwell stayed in the vehicle, and Latimer and Hayes went inside. When they returned to the vehicle, Latimer and Hayes told Petitioner and Southwell that there was $400 in cash and about two ounces of marijuana in Barnard's apartment.  The four men then agree to rob the men in the apartment.

Meanwhile, Larson's uncle, Gary Janiszewski, went to Barnard's apartment to purchase marijuana.  He testified that he stayed for about fifteen minutes and bought a half-ounce of marijuana.  As he left, Janiszewski, saw four men arrive at the apartment,

though he could not identify them.

Inside the apartment, Larson asked Latimer about the two additional men, Petitioner and Southwell.  Latimer asked Larson for marijuana, but Larson said he did not have any. Barnard then handed Latimer a bag containing a half-ounce of marijuana.  Petitioner smelled the bag, and it was handed back to Barnard.  Latimer then starting negotiating a price with Barnard.

Petitioner and Southwell then pulled out handguns and demanded that Barnard give them the bag of marijuana.  Barnard walked over to Petitioner to hand over the bag.  As Petitioner grabbed the bag, he fired his gun at Barnard's chest.  The four men then fled the apartment.  Parisza and Larson stayed and attempted to assist Barnard.

Two individuals, Jessica Graham and Steven Gray, were talking close to the area where Southwell's vehicle was waiting.  They saw the men run past them and into an alley, and one of them yelled something about a fire.  Gray was the caretaker of the apartment building, and so he went into the building where he found Barnard lying in Parisza's arms.

Southwell dropped Latimer and Hayes off, and then drove Petitioner back to Southwell's house.

The police arrived at the scene and questioned Larson and Parisza.  Parisza named "Chris" (Latimer) and "DQ" (Hayes) as being involved in the shooting.  He did not know the other two men.  Larson, who was on bond, at first denied being present during the shooting.  The next day, he admitted he was in the apartment during the shooting, and he said there were four men involved.

Barnard was pronounced dead when he arrived at the hospital. A single .22 caliber

bullet was retrieved from his chest.

Southwell drove Petitioner to Christine Squires' house in Jackson, Michigan. Squires testified that while he was with her, Petitioner told her that he thought he killed somebody. He told her that he was with his nephew and two other men when he shot someone.  He told her that he hid the gun in his sister's basement in a bag.  Squires' son, Steven Schuler, also testified that Petitioner told him that he had shot someone, but Schuler was so drunk at the time, he could not remember Petitioner's exact words.

On December 2, 2007, the police searched Petitioner's sister's house.  They found a bag with a Western Union receipt bearing Petitioner's name.  They also found two boxes of .22 caliber ammunition in the bag along with a single-shot .22 caliber pistol.  Petitioner's fingerprints were discovered on a music CD found in the vehicle Southwell used on the date on the shooting.   The bullet recovered from Barnard's body was consistent with the .22 caliber bullets found in Petitioner's bag.

A firearms expert testified that Petitioner's pistol produced similar lands and grooves with a right-hand twist that were consistent with the bullet recovered from the body.

When police caught up to Petitioner who was riding in Zawacki's car, Petitioner directed her to keep driving and not pull-over.  Zawacki pulled over anyway, and ran from the car.  Petitioner was arrested.

The police interviewed Southwell.  After initially denying any knowledge of the shooting, he admitted that he, Petitioner, Latimer, and Hayes were in the victim's apartment. Southwell claimed, however, that they did not plan a robbery and he did not know who fired a shot.  Southwell later admitted to police that he saw Petitioner pull out his gun just before he heard the shot.  Southwell eventually pled guilty to conspiracy to commit

-4-

armed robbery and armed robbery, and he was sentenced to 11½-to-40 years in prison in exchange for his truthful testimony against Petitioner. Haynes pled guilty to unarmed robbery and conspiracy to commit unarmed robbery, but he did not testify at Petitioner's trial. A separate jury convicted Latimer of first-degree felony murder, armed robbery, and conspiracy to commit armed robbery. Latimer did not testify at Petitioner's trial either.

The jury found Petitioner guilty as charged, and Petitioner was subsequently sentenced as indicated above.

Thereafter, Petitioner filed an appeal of right. His appointed counsel filed an appellate brief, raising the following claims:

> I. The trial court abused its discretion in refusing to instruct the jury on the lesser included offense of common law involuntary manslaughter where the instruction was appropriate under the law and on the facts of the case.
>
> II. The prosecutor violated Defendant's state and federal constitutional due process rights to a fair trial when in closing argument she improperly shifted the burden of proof to the defense.

Petitioner also filed his own pro se brief that raised an additional two claims:

> III. The local prosecutor denied Defendant-Appellant a fair trial where she abandoned her clear legal duty to protect the rights of the accused resulting in a conviction that is devoid of due process of law in violation of the 14th Amendment; Const. 1963, art. 1, § 17.
>
> IV. Defendant-Appellant was denied his Sixth Amendment right to the effective assistance of counsel, and is entitled to a hearing to develop a testimonial record to support his claim.

The Court of Appeals affirmed Petitioner's conviction in an unpublished opinion.

*People v. Cockream*, No. 284046 (Mich. Ct. App. Nov. 19, 2009).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same four claims he raised in the Court of Appeals. The Michigan

-5-

Supreme Court denied leave to appeal. *People v. Cockream*, 484 Mich. 1134 (2010) (table).

Petitioner raises the same claims in the present action that he raised in the state courts on direct review.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal

justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5  (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

### B.  Jury Instuctions

Petitioner's first claim asserts that the trial court erred when it failed to instruct the jury on the lesser offense of involuntary manslaughter.  Petitioner asserts that such an instruction was warranted because the jury might have believed that his only intent was to rob Barnard, and the gun accidently discharged when Petitioner took the bag of marijuana from Barnard.  The Michigan Court of Appeals rejected the claim on the gounds that a rational view of the evidence did not support a finding that Petitioner was grossly negligent when he shot Barnard. The claim must be denied because Petitioner cannot support it with clearly established Supreme Court law as required by § 2254(d).

The United States Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case. *See Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003), citing *Beck v. Alabama*, 447 U.S. 625, 638 n.4 (1980). Thus, a state trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief. *Beck* has been interpreted by the Sixth Circuit to mean that "the [federal]

-8-

Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). Thus, the failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is not an error cognizable in federal habeas review. *See Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990).

Accordingly, the Michigan Court of Appeals' determination that a lesser included offense instruction regarding involuntary manslaughter was not warranted under state law in Petitioner's trial was not contrary to, nor an unreasonable application of, Supreme Court precedent, and thus does not support federal habeas relief. *See Worden v. McLemore*, 200 F. Supp. 2d 746, 756 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on this claim.

## B. Prosecutorial Misconduct - Burden Shifting Argument

Petitioner's second claim asserts that the prosecutor committed misconduct during closing argument when she improperly shifted the burden of proof onto Petitioner during rebuttal argument. The claim must be denied because it was reasonably adjudicated by the Michigan Court of Appeals.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168,

-9-

181(1986) (citing *Donnelly*); *Parker v. Matthews*,    U.S.   , 132 S. Ct. 2148, 2153, 183 L.

Ed. 2d 32 (2012) (confirming that *Donnelly/Darden* is the proper standard).

During closing argument, defense counsel attacked the thoroughness of the police

investigation. Petitioner's attorney argued that: (1) the prosecution failed to test Southwell

and Petitioner's clothing for gunshot residue, (2) the police failed to determine if Petitioner's

gun had been recently fired, (3) the police failed to find out when the ammunition found in

Petitioner's bag was purchased, (4) the police failed to search Latimer and Haynes' houses,

(5) the police failed to check any clothing for blood, (6) the police failed to determine if

Latimer had a gun, and (7) the firearms' expert failed to determine whether Petitioner's gun

had a hair trigger.

During rebuttal closing argument, the state prosecutor commented:

> In every criminal case the Prosecutor has the burden of proof. However, the Defense has the right to call witnesses, to subpoena witnesses in this case. Defense is presenting to you this idea that we're only giving you bits and pieces, that there's other things out there that we didn't present. Well, the Defendant also has the right to call witnesses.

T 5/2/08, p. 843.

Petitioner's attorney objected, stating: "According to the law, we don't have to do

anything. And for her to comment on what we did, said, or brought, is against my client's

right to be able to not do anything." Id. p, 844. The trial then court excused the jury, and the

prosecutor explained that her comments were intended to rebut defense counsel's

comments regarding potential evidence not investigated by the police.

The trial court asked if defense counsel wanted a curative instruction, but Petitioner's

attorney asked for a mistrial. The court denied the request and gave defense counsel time

to draft a cautionary instruction. When the jury returned, the trial court read the following

instruction:

> You have heard the Prosecutor mention what Defense could have done. I point out to you it is the Prosecutor's job to prove each and every element beyond a reasonable doubt, and the Defendant does not have to do anything, and at no point does the burden shift to the Defense to prove innocence.

Tr. 5/2/08, p. 853.

A prosecutor may not shift the burden of proof to the defendant, *Patterson v. New York*, 432 U.S. 197, 215 (1977), or "suggest that the defendant ha[s] the burden of proof or any obligation to produce evidence to prove his innocence." *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006) (quoting *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993)). Nor may a prosecutor use a defendant's decision to remain silent as substantive evidence of guilt. *Hall v. Vasbinder*, 563 F.3d 222, 232 (6th Cir. 2009).

Although the prosecutor in this case did say that Petitioner also had the right to present evidence, the prosecutor did not suggest that Petitioner had the burden of proving his innocence. Indeed, the prosecutor's comment was prefaced with the statement that it bore the burden of proving Petitioner guilty. It was reasonable for the state courts to interpret the remark about defense counsel being able to call witnesses as a response to defense counsel's closing argument that the prosecution had failed to produce certain evidence and witnesses. The prosecutor was entitled to wide latitude in rebuttal argument and to fairly respond to defense counsel's arguments. *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982) (en banc)).

Even if the comment unfairly suggested to the jury that Petitioner was required to present evidence, any unfair prejudice was ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. *See Hamblin v. Mitchell*, 354

-11-

F. 3d 482, 495 (6th Cir. 2003). Jurors are presumed to follow the court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Petitioner has therefore not shown that the prosecutor's argument rendered his trial fundamentally unfair.

### C. Prosecutorial Misconduct - Claims Raised in Pro Se Brief

Petitioner's third claim is comprised of three additional allegations of prosecutorial misconduct. These claims were raised during his direct appeal in his pro se brief. First, Petitioner asserts that the police produced a different gun at trial from the one that was recovered from the bag in his sister's basement. Next, he asserts that the prosecutor improperly elicited testimony about the shirt he was wearing when the incident occurred without producing the actual shirt. Finally, he asserts that the prosecutor vouched for the credibility of Southwell. The claim must be denied because the state appellate court reasonably rejected these allegations.

First, Petitioner asserts that the gun presented at trial was not the one found in his sister's basement.

Prosecutors may not deceive a court or jury by soliciting false evidence or by allowing false evidence to go uncorrected when it appears. *Giglio v. United States*, 405 U.S. 150, 153 (1972). Nevertheless, "mere inconsistencies in testimony by government witnesses do not establish knowing false testimony." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989).

Here, there was inconsistent testimony presented regarding the color of the pistol.

-12-

At trial, Larson testified that he told the police that Petitioner had "a black gun" or "[a] dirty black" gun. Larson also testified it "just looked like a tarnished, dark colored gun." Parisza, on the other hand, described Petitioner's gun as "a silver gray." Southwell testified he told police that Petitioner's gun was "brass colored."

Ludington Police Department Sergeant Matthew McMellen photographed the 22-caliber single-shot pistol found in Petitioner's sister's basement. McMellen's photograph was admitted as a trial exhibit and shown to Petitioner's jury. Petitioner has attached a copy of this photograph to his petition. The low-quality color copy has high-color saturation and depicts a pistol with a dark metallic barrel and a brown or dark orange grip. McMellen secured the pistol, and it was admitted as a trial exhibit. The pistol presented at trial was also identified by Mason County Sheriff's Department Deputy Jeff Fiers, who was the officer who found it in the bag.

Petitioner attached to his petition two additional photographs of the pistol. A newspaper photograph of a McMellen holding the pistol in court, of somewhat better quality, portrays what appears to be the same model single-shot pistol with the same color barrel and a dark brown or black grip. Another photograph purported to have been taken by Petitioner's appellate counsel, of better quality than the previous two, portrays the same model single-shot pistol with a metallic barrel and a dark brown or black grip.

Having reviewed the photographs and the witnesses' description of the pistol, it is easy to see why the descriptions of the pistol varied. The grip could easily be described as either brown or black, and the barrel and casing could easily be described as either metallic or black. The photograph chiefly relied upon by Petitioner is of very poor quality - all the colors in it appear to be distorted. There is no basis on which to conclude that the

prosecutor knowingly presented false testimony.  Rather, the record only reveals easily explainable inconsistencies in the description of a pistol.  The pistol, the photographs, and the varying descriptions were all presented to the jury for consideration.  There was no misconduct.

Next, Petitioner asserts that the prosecutor argued facts not in evidence when she argued that Larson testified that Petitioner was wearing a white and blue flannel shirt without producing the shirt found in the bag with the pistol. It is well-settled that a prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence. *See Donnelly*, 416 U.S. at 646; *Hodge v. Hurley*, 426 F.3d 368, 380-81 (6th Cir. 2005).

The prosecutor did not argue facts not in evidence.  Larson testified at trial that he recalled the shooter wore a "blue and white like checkered sleeve" material which "looked like flannel." Tr. 4/29/08, p. 404.  He later testified that he was not sure what Petitioner was wearing, but it was not a black leather jacket. Id., p. 420.  The prosecutor's argument was fairly based on this testimony.  There is no requirement that the prosecutor produce physical evidence to corroborate a witness' description.  The argument was not improper.

Finally, Petitioner asserts that the prosecutor vouched for the credibility of Southwell. Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also, United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).

-14-

During cross-examination, defense counsel suggested that Southwell's statements to police - which did not implicate Petitioner - were true, and that he only later placed the blame on Petitioner as a result of police coercion. Tr 5/1/08, pp. 711-731. Defense counsel asked Southwell if he obtained his plea agreement only after he agreed to testify against Petitioner, and Southwell agreed.   Id., p. 736. Defense counsel then asked about the benefit of Southwell's bargain, and noted that he avoided a life sentence without parole in exchange for his plea. Id., pp, 736-737.

On re-direct, the prosecutor then asked:

Q. Your agreement requires you to give truthful testimony; is that correct?

A. Yes, it does.

Q. And was that the statement in the deal was that your testimony had to be truthful?

A. Yes, it did.

Id., p. 737.

In rebuttal argument, the prosecutor mentioned Southwell's plea agreement in the context of correcting defense counsel's misstatement about its minimum length. T 5/2/08, pp. 829, 857. The prosecutor did not reiterate the requirement that Southwell testify truthfully.

The Sixth Circuit consistently has held that it is not improper vouching to refer to a promise to testify truthfully as part of a plea agreement. *See United States v. Sherrills*, 432 F. App'x 476, 483 (6th Cir. 2011); *United States v. Owens*, 426 F.3d 800, 806 (6th Cir. 2005); *United States v. Trujillo*, 376 F.3d 593, 608-09 (6th Cir. 2004). Indeed, in *United States v. Tocco*, 200 F.3d 401, 422 (6th Cir. 2000), the court held that the introduction of

-15-

a plea agreement containing a statement that the witness already had "provided truthful and very valuable testimony" in exchange for his plea did not amount to vouching. *Id.* There was nothing improper about the prosecutor's questions on re-direct examination of Southwell, or her comment during rebuttal argument.

Because none of Petitioner's allegations of prosecutorial misconduct have merit, this claim must be denied. Similarly, Petitioner fourth claim, asserting that his trial counsel was ineffective for failing to object to the misconduct must be denied.  Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 F. App'x 468, 475 (6th Cir.2006).

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.  The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's

claims. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: January 18, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 18, 2013, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

-17-